ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ENID I. ORTIZ RODRÍGUEZ<br><br>Demandante-Recurrida<br><br>v.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Demandada<br><br>LCDA. JESSICA E. NÁTER CRUZADO<br><br>Peticionaria | KLCE202400817 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Caso Núm.: CG2021CV01124<br><br>Sobre: Represalias, Daños y Perjuicios |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Pagán Ocasio y el juez Rodríguez Flores.

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

El Tribunal de Primera Instancia ("TPI") declaró "culpable" de desacato a una abogada y la condenó a reclusión por seis meses, o hasta que cumpliese con una orden previa de dicho foro. Ante el hecho de que, por sucesos posteriores, ha desaparecido la razón por la cual la abogada había incumplido con la referida orden, se deja sin efecto la decisión recurrida. Veamos.

I.

El 3 de julio de 2024, la parte aquí demandada (Corporación del Fondo del Seguro del Estado, o el "Cliente"), por escrito, y a través de la Lcda. Jessica Náter Cruzado (la "Abogada"), le informó al TPI que el contrato entre el bufete de la Abogada y el Cliente había vencido el 30 de junio. Le advirtió al TPI que, "por tal razón, nos vemos impedidos de representar" al Cliente, pues "cualquier gestión por nuestra parte sería ... una donación no autorizada", de

Número Identificador
SEN2024_____

conformidad con el Artículo 4.2 de la "Ley de Ética Gubernamental". Por tanto, solicitó al TPI que suspendiera una vista pautada para el 17 de julio.

Mediante una Orden notificada el 9 de julio, el TPI denegó la referida solicitud.

El 10 de julio, la Abogada solicitó reconsideración. Adujo que su bufete estaba "imposibilita[do]" de continuar brindando sus servicios al Cliente, pues se generaría una "factura" que no podría ser "pagada con fondos públicos".

El TPI, mediante una Orden notificada el 16 de julio, denegó la referida reconsideración. Señaló que la vista estaba "calendarizada desde enero 2024" y le advirtió a la Abogada que, de no comparecer, "se señalará vista de mostrar causa".

En la vista del 17 de julio, y según la minuta, la Abogada le indicó al TPI que no había preparado su parte del informe sobre conferencia con antelación al juicio porque su bufete no tenía contrato vigente con el Cliente. El TPI le subrayó que era responsable del caso hasta tanto fuese relevada por el tribunal. La Abogada insistió en que no participaría de la vista. El TPI entonces citó a la Abogada a una vista de mostrar causa a celebrarse el 24 de julio y expidió una orden escrita en la cual le advirtió a la Abogada que, en la vista, tendría que mostrar causa por la cual no debía encontrársele "incursa en desacato por incumplimiento con las órdenes del Tribunal".

El 23 de julio, el bufete de la Abogada compareció por escrito; reiteró su teoría de que, como el contrato con el Cliente no estaba vigente, estaba impedida de trabajar en el caso. Sostuvo que, en ausencia de un contrato vigente, el bufete no estaba autorizado a representar al Cliente ante el TPI. Arguyó que el Artículo 4.2(a) de la Ley de Ética, *infra,* le prohíbe a un servidor público solicitar un

beneficio para su agencia de una persona privada "reglamentada o contratada por esta".

El 24 de julio, se celebró la vista de mostrar causa. La Abogada no compareció; en vez, compareció otra abogada del bufete de aquella. Esta consignó que la Abogada no había preparado el informe y que tampoco lo produciría. El TPI "encontró incurso en desacato a la [Abogada] y ordenó su arresto hasta tanto se cumplan las órdenes del tribunal o transcurra el término establecido de seis meses".

Ese mismo día, el TPI consignó la anterior en una *Sentencia* (la "Determinación"). En la misma, el TPI "declar[ó] culpable" a la Abogada "por el delito de desacato sumario" y la condenó "a la pena de hasta un máximo de 6 meses de reclusión o se cumpla con las órdenes del tribunal, lo que ocurra primero".

El 29 de julio, la Abogada presentó el recurso que nos ocupa; reproduce lo planteado ante el TPI y, por tanto, sostiene que, como cuestión de derecho, erró el TPI al emitir la Determinación. Además, plantea que, en todo caso, el TPI abusó de su discreción, pues, como el juicio está pautado para mediados de octubre, el TPI podía razonablemente esperar a que se solucionara el asunto contractual entre su bufete y el Cliente. Junto con el recurso, la Abogada solicitó la paralización de la ejecución de la Determinación. Mediante una Resolución de 29 de julio, este Tribunal ordenó la paralización solicitada y le concedió a la parte recurrida hasta el 12 de agosto para exponer su postura. Dicha parte no compareció.

Mientras tanto, el 13 de agosto, la Abogada nos informó que se había suscrito un nuevo contrato de servicios entre su bufete y el Cliente, por lo cual ya estaba en disposición de continuar trabajando en el caso. Planteó, sin embargo, que el caso no era académico porque la controversia era susceptible de repetirse. Resolvemos.

II.

Como cuestión de umbral, concluimos que la controversia ante nosotros no es académica. Ello porque el TPI ordenó el arresto y encarcelación de la Abogada hasta tanto esta produjese su parte del informe de conferencia con antelación a juicio, y ello no ha ocurrido. Por tanto, si se desestimara el presente recurso, bajo los términos de la Determinación, la Abogada sería arrestada y recluida.

Por otra parte, y contrario a lo planteado por la Abogada, esta tenía la obligación de cumplir con sus obligaciones hacia el Cliente, y con las órdenes del TPI, independientemente de que, por no haber contrato vigente, el bufete no sería compensado por su trabajo.

"La naturaleza de la función del abogado requiere de éste una escrupulosa atención y obediencia a las órdenes que emiten los tribunales. Desatender las órdenes dictadas constituye una grave ofensa a la autoridad del tribunal …". *In re Dávila Toro*, 179 DPR 833, 840 (2010). **La dedicación del abogado a representar su cliente "no puede estar subordinada al cobro de los honorarios"**. *Dávila Toro*, 179 DPR a la pág. 841 (citas omitidas) (énfasis suplido).

Los abogados, "como oficiales del tribunal, tienen una función revestida de gran interés público que genera obligaciones y responsabilidades duales para con sus clientes y con el tribunal en la administración de la justicia. Ello les impone el deber de asegurarse que sus actuaciones … estén encaminadas a lograr que las controversias sean resueltas de una manera justa, rápida y económica". *Dávila Toro*, 179 DPR a la pág. 842 (citas omitidas).

En este caso, mientras la Abogada fuese la representante de récord del Cliente ante el TPI, esta, en todo momento pertinente, ha tenido la obligación de representarlo con diligencia y de cumplir con las órdenes del tribunal. Ello no se afecta por el hecho de que, ante la ausencia de contrato con el Cliente, el bufete no podría recibir compensación por sus servicios. Tampoco es correcto que, por

haber expirado el contrato de compensación de servicios, el bufete careciera de autoridad jurídica para continuar representando ante el tribunal al Cliente. Ello pues aquí no hay controversia sobre el hecho de que el bufete asumió la representación del Cliente a solicitud de este y nadie ha planteado que el Cliente le haya solicitado su renuncia al caso[1].

Ahora bien, por las siguientes consideraciones, concluimos que procede dejar sin efecto la Determinación. En primer lugar, al haberse ya renovado el contrato entre el bufete y el Cliente, se disipa el riesgo de que la Abogada continúe en incumplimiento con lo ordenado por el TPI.

En segundo lugar, en todo caso, habría abusado de su discreción el TPI al emitir la Determinación. Ello porque dicho foro tenía otras opciones menos severas para sancionar el incumplimiento de la Abogada con sus responsabilidades. En vez de recurrir, como primera opción, a la extrema medida adoptada, lo más prudente era antes imponerle sanciones económicas a la Abogada y advertir de la situación directamente al Cliente. De no obtenerse el resultado deseado, el TPI todavía tenía la opción de imponerle sanciones al Cliente (por ejemplo, anotarle la rebeldía) e, incluso, de descalificar a la Abogada y ordenar al Cliente que obtuviese nueva representación. En fin, ante los hechos particulares de este caso, ordenar la reclusión de la Abogada hasta que cumpliera con la orden del tribunal resultó una medida inoportuna e innecesaria.

---

[1] El Artículo 4.2(a) de la Ley de Ética Gubernamental, 3 LPRA sec. 1857a(a), no tiene pertinencia alguna en este contexto, pues únicamente prohíbe cierta conducta a los funcionarios públicos, sin que ello de algún modo afecte o incida sobre la obligación ética de un(a) abogado(a) hacia su cliente en conexión con un caso en el cual ha asumido su representación ante el tribunal. Esto último está reglamentado por los Cánones de Ética Profesional de la abogacía, según interpretados por el Tribunal Supremo de Puerto Rico.

III.

Por los fundamentos anteriormente expuestos, se expide el auto solicitado y se revoca la determinación recurrida.

**Al amparo de la Regla 35 (A)(1) de nuestro Reglamento,[2] el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El juez Rodríguez Flores concurre sin expresiones escritas. El juez Pagán Ocasio concurre con la siguiente expresión:

> "El juez Pagán Ocasio concurre con el resultado. No obstante, no avala las expresiones de la ponencia mayoritaria en lo relacionado a la Lcda. Jessica Náter Cruzado y el bufete para el cual trabaja. Adviértase que en la situación de autos **NO se trata de un asunto de compensación económica para la abogada** sino de contratación pública gubernamental. No estoy de acuerdo con la conclusión de la mayoría del panel de que la abogada tenía que representar a la instrumentalidad gubernamental aunque no tuviese un contrato vigente para tal representación".

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[2] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B R. 35.